Mr. Faust was pulled over for running a red light. When he could not produce the valid driver's license, the police took him into custody and handcuffed him. At that point, he was secured and had only committed a traffic offense, and yet the police went into his car, went into the rear pocket behind the passenger seat, and recovered a gun. Leonard Faust denied owning the gun and denied owning the car, and yet the court ultimately found him guilty of being an armed habitual criminal, and he was sentenced to 10 And also, as time permits, briefly touched on the issue concerning the trial court's consideration of Mr. Faust's prior convictions for the purposes of impeachment. The U.S. Supreme Court recently decided in Arizona v. Gantt Before we get to Gantt, obviously the motion to suppress wasn't based on Gantt because no one could anticipate the Gantt ruling. So the motion to suppress was simply on whether or not there was a proper basis to stop the vehicle. And the trial judge ruled that somehow or other, his admission on the stand that he was driving an unsuspended license was somehow information that was conveyed or that was within the trial judge truncate the suppression hearing after the defendant testified so that the state, while ready to present a witness, was precluded from doing so? Or did the state say no prima facie case on the suppression hearing, therefore we don't have to put on anything? I believe it was the court that truncated the proceeding for the state had an opportunity to do so. At the hearing, the question is, did the officers have a lawful basis to stop the vehicle? And at the trial, we learned that the lawful basis to stop the vehicle was that the ruling on a motion to suppress, a denial of a motion to suppress, on review before an appellate court, the appellate court considered evidence at the trial to determine whether or not the ruling was correct. So if the ruling was simply the officers had a valid reason to stop the vehicle, and now on the trial we have testimony that the defendant passed the red light even though he claimed he didn't, can we as a reviewing court say at least before addressing Gant, can we say that the trial judge properly denied the motion to suppress based on whether or not they had a lawful basis to stop the vehicle to begin with? Based on the evidence at trial, this court can't say that the stop was lawful. So once the stop is lawful, then it's a question of whether Gant allows for a vehicle custodial search, as I think somebody said, it was a custodial search of the vehicle, whether or not Gant allows for such a search once the defendant is basically secure, handcuffed, away from the vehicle, unable to control the situation. Absolutely. Now what do we do with the fact that the trial judge never ruled on that, and that was never the issue before, raised by the defendant in his suppression motion, and going a little further, as I've learned, did the defendant raise the improper, the incorrect ruling by the trial judge on the suppression motion in his post-trial motion? The incorrect ruling as to Gant? Well, an incorrect ruling is an incorrect ruling. I don't know if you have to give a basis for it. You can't do it, you can't raise Gant if Gant didn't exist at the time. Did he raise the incorrect ruling in his post-trial motion? I would have to look back at my notes. I believe that he did challenge the court's ruling on the motion based on the stop. Post-trial motion? I believe so. So there is no forfeiture? Well, there is no forfeiture as to Gant. Oh, we know that, because Gant didn't exist at the time. Right, right. Except you don't cite to a case, you know? I thought the Illinois Supreme Court case was under the statute. But you say in your brief, the state failed to explain how Faust could have forfeited a new rule of criminal procedure, which is the state concedes calls for a retroactive application. In other words, nobody was aware of it at the time that they filed their post-trial motion. Nor does the state refer to any authority for its assertion. Well, whose obligation is it to defend on a forfeiture claim? You're saying, well, there aren't any cases out there that the state filed. You could have mentioned Steckley yourself, I suppose. Well, I did mention Steckley. Did you mention Steckley? In the opening brief. Oh, okay. All right. And claim that the retroactive applies to this. And the state, in its brief, conceded that retroactivity applies to the new rule in Gant as well. I don't think anybody's quarreling with that aspect. Okay. And by implication, raising it in the main brief, you are saying the forfeiture doesn't have any role here under that authority of the Supreme Court. Correct. And the state raising forfeiture really doesn't have to be addressed. Right. The underlying rationale of Steckley is that it is unfair to allow a defendant to waive an issue that's not available to him at the time of the arrest. So what do we do with Gant, given that it was never decided by, or that was never addressed by the trial court? Do we simply rule on it as a matter of law? Yes, and that's what the courts in Illinois have been doing, have been ruling on Gant. The Illinois Supreme Court ruled on Gant in Bridgewater, applied it to the case before it. This court in People v. Clark, and the second district in Arnold, People v. Arnold. So Illinois courts have been addressing Gant on the merits. So just so it's clear, the stop itself was lawful, but the search was not. Even though the motion to suppress said the stop itself was unlawful. Based on the officer's testimony at trial, this court could find that the stop was lawful. The defendant disputes that through his testimony, but there is evidence to support. Yeah, what does that become? It becomes a matter of fact. It's a question of fact. Right, right. Credibility of the witnesses. Right. But certainly the trial, your position is that the trial was wrong without much dispute in truncating that suppression hearing to begin with. Because certainly, if it's only, if after the defendant testifies, the only question is whether a prima facie case has been made out, the burden shifts to the state to come forward. And the question before us, whether a prima facie case had been made, seems pretty clear that a prima facie case had been made. Well, I mean, I think the evidence at the motion to suppress was not sufficient to support that there was a probable cause for a stop. Or that the court's ruling was incorrect. It could have been a correct stop though, it could have. Based on what came out of trial, looking back at trial. But the ruling itself was based on the record. What was presented seems to have been off the mark. Right, right, the motion. And I'm sorry if I'm sort of taking you away from your organized presentation. Go ahead. Well, I... Are there any limitations that Gant, I mean, you believe that Gant applies completely and controls the outcome here? Right, right. Well, then you can save your time and we'll find out where the state stands regarding the application of Gant to this case and then... Okay, I will save my time for rebuttal then. I would just like to briefly point out that as to the second issue, just a couple sentences that there the court did consider Mr. Faust's prior convictions for the purposes of impeachment. The state concedes that it did so in its brief. This is, again, just as in People v. Naylor, it comes down to... Let me ask you this, if the search is an illegal search, we don't have to get into that, do we? If you reverse, right, that is correct. Okay. Right. But let me ask you this regarding a policy question before us. If this sort of error... If we find that error occurred and it seems to me it's a plain arithmetic error, we know when the prior convictions were, we can add 10 years to that and if the trial is beyond those 10 years, that sort of impeachment conviction should not be admitted. Right. And the state should be able to do that same arithmetical calculations if you want to go that far and they shouldn't seek to admit it, but they did in any event in your position. Right. And then it did impact the court's finding of credibility. And then the trial court adopted it. Right. Okay, I will save any further questions on Gantt for my rebuttal. Before you start, tell me how could this search be... Can we get him to identify himself? May it please the court, Assistant State's Attorney John McNulty on behalf of the people. I'm sorry, what was the last name? McNulty. McNulty. Thank you very much. Now can you answer my question? How could this search be proper? How could this search be proper? Your Honor, this search, there was never an evidentiary hearing on this search. I think that if you look at, there are, that was never litigated, so it is difficult to ascertain all the facts that surrounded the search that took place. At the motion to suppress, who testified? At the motion to suppress? Uh-huh. The defendant. Did he ever say he was handcuffed? At the suppression hearing. At the suppression hearing, I do know that it later came out in the testimony. I know it came out during the trial, but that was the testimony of an officer, I suppose. Yes. Okay. I'm just curious how the issue of, everybody seems to assume, and this is critical for a Gantt analysis, that he was handcuffed. Okay? Because absent the handcuffing, then you have a question of fact that Gantt certainly doesn't trump. You'd have to have a determination as to whether or not he, in fact, might have been able to access that area of the car that had the gun. That's true, Your Honor, and actually. But everybody assumes. I guess you concede, too, that he was handcuffed? Yes, I do concede that he was handcuffed. All right. Well, that solves that problem. But let's go back to the suppression hearing itself. If you were put in the position of justifying the trial court's ruling, what did the defendant fail to do at the suppression hearing to establish a prime official case? What was missing? Why did the police have a basis to stop the vehicle? Well, Your Honor, I think that you would have to look at the entire record for that basis. I'm looking only right now at the suppression hearing. Indulge me on that point. Looking only at the suppression hearing, did the judge correctly deny his motion? Yes or no? No. Okay. And as the prosecutor, your office could have said, Judge, we'd like to at least offer our officer's testimony to at least eliminate an issue that might be raised on appeal as to whether or not the defendant ran through that red light. We're only going to offer it for that basis only. But you could have let him do that had your office maybe insisted or made an offer of proof if it comes down to that. Your Honor, maybe that could have been done. Obviously, that isn't part of this record. And then when we look at the evidence at trial to determine whether or not the motion to suppress was properly denied, we can also look at the evidence at trial to determine whether or not Gantt controls. If the officer testified that the defendant was handcuffed and maybe was a distance from the car before the car was searched, it suggests that maybe those, you know, the Gantt considerations as to whether or not a search can be performed were satisfied. Well, Your Honor, as far as the search itself of the car, what was litigated in the trial court was a stop, and as this court can look at the entire trial record, to affirm the judge's ruling based on the trial testimony of the officer, observing the defendant go through a solid red light providing probable cause to stop the car. The Gantt issue is in a different procedural posture to the extent that this issue was never litigated. A factual inquiry of the search was never made. The defendant did not choose to proceed to challenge... Choose to proceed? I mean, how could he choose to proceed if he didn't know the ruling was going to be made? Well, Your Honor, I think that that presumes that there are other things that may have been known to defense counsel when he made his strategic decision not to proceed on that theory. For instance, since we never had an evidentiary hearing, was that car ultimately subjected to an inventory search? If that would have happened, it would have been... So your position is that you remand? We should remand? Well, no, Your Honor, I'm not suggesting that you remand this case. Can we get to attenuation without a remand? Your Honor, I don't know... If that was your argument. I think that this case is factually somewhat different than the Gantt case. I would not agree that it's an identical factual situation. If you look at some of the differences between the instant case here and the Gantt case, as these officers... What you're really arguing in your brief, as I understand it, is that you can distinguish this case, or at least you would like us to distinguish this case from Gantt, by saying the mere fact that he was handcuffed is not this positive. But because he was still, even though you admit he was cuffed, he was close enough to access the weapon so that it becomes a question of fact as to whether or not the handcuffing alone is enough to bring it under Gantt and say, as a matter of fact, there is no way he could have accessed the weapon. And there should have been an evidentiary hearing on that issue. He could be Harry Houdini, right? He could be Harry Houdini. He could get out of the handcuffs. Just a second. He doesn't have to be Houdini. The state does have the right to at least an evidentiary hearing on the issue. That's all. That's all he's arguing. We're not here to resolve factual questions. At least I don't think we are. And you're not asking us to, are you? No, I'm not, Your Honor. Since Gantt does announce a principle of law that we all agree is now applicable to this case, but neither the attorneys nor the judge at the time that the case was decided had the advantage of Gantt. But you're not recommending the case be sent back in, are you? Your Honor. You want a straight affirmance. Absolutely I want a straight affirmance. I think that if you look at it. But can you get a straight affirmance if you acknowledge that the point raised by Justice Cahill is really a fact question? That is, whether or not he was at sufficient distance from the car, even though handcuffed, that still allowed him to have access to the gun in the car. I think that the argument can be made that he still was within reaching distance of that car. The argument wasn't made. You make it in your brief and that's fine. But nobody at either the motion to suppress it during the course of the trial were aware of the fact that this was a new wrinkle that was added to the suppression issue that wasn't there before. Because, first of all, Gantt did, in effect, although they don't say it. I mean, it overruled a previous Supreme Court, U.S. Supreme Court case. And, Your Honor, the... Well, a rather interesting group of people on one side and an interesting group of people on the other side that I haven't been able to figure out yet. Your Honor, this case could have been litigated in the trial court under that theory. The defendant did not do so. Well, Mr. McNulty, let me ask you this question. What is your best case that, on the record before us, we can affirm on that question that you've just brought out to us? That is, whether or not the defendant was still sufficient range, within the range of access. What's your best case? I think the facts, Your Honor, is this case here, and that is that, on the record at hand, what you have in front of you is that there's a furtive movement to the rear pocket of the passenger front seat by the defendant as the officers approached the car. That certainly raised their suspicion. You're absolutely right. And the officer, in fact, testified to that. He is outside the car, apparently against his own car, towards the... Were the windows raised or down? Does that make a difference? It makes a difference, and that's not something that was part of the hearing. But you still believe we can resolve all those factual questions on the record before us? And the best case you have that, for that, for our authority to do so is, I'm still looking for a case. If you look at Clark, if you look at Bridgewater, if you look at Gant, all of the individuals, when the searches of those vehicles took place, were removed from the area and restrained. This case is different in that respect. So he was closer than those individuals. That makes sense. Yes, he was. And, Your Honor, this defendant, Mr. Faust, could have been Gant. Mr. Gant did not have the benefit of Gant before he challenged this search under Belton and its progeny. He did so, and a watershed case came down from the U.S. Supreme Court. There's certainly logic to that, that if the defense attorney in Gant was able to preserve this issue, maybe we should expect that from the defense attorney in Faust, but I think that's a pretty high bar to require counsel to meet. And that's why we have a rule that says that a case on direct appeal is subject to a new ruling, because we want to give everyone the benefit of creativity of defense attorneys that, you know, the defense attorney in this case didn't have. Well, Your Honor, in Gant and in Bridgewater, those searches were litigated. Certainly no argument can be made that counsel is in any way ineffective for not divining the fact that Gant was going to come during the pendency of this case, but it gets back to the fact that he could have litigated it. He didn't. And as a result, it is not properly before this court. But we would be the first court on a Gant issue to say that, to impose the burden on defense counsel to have raised Gant or the issue in Gant in order for us to review whether or not Gant applies. We would be setting that precedent, would we? Well, Your Honor, it is a, maybe with respect to the Gant situation, but it is a long-time procedural bar to not be able to litigate in the appellate court what has not been challenged before the trial court. So in that respect, it would not be a novel or unique position to hold the defendant to. But it would be precedent-setting in terms of a Gant application. Not necessarily forfeiture. You're right. Forfeiture happens all the time. But have we had a, do we have a case that says Gant issue was forfeited because it wasn't raised during the suppression hearing in the case before the court? I have not seen a case, Your Honor, as you describe. All right. The other question I have is how did those convictions get admitted into evidence if they were beyond the Montgomery 10-year rule? Your Honor, the convictions were offered and admitted, they were offered by the state and admitted by the judge for purposes of impeachment. And I know that. What's the rule on it? What's the rule on it? How old can they be? They can be 10 years old, Your Honor. And were they beyond that 10-year? They were. However, a couple of points I'd like to make about those prior convictions is that if you look at case, one of the key cases cited by the defense, Naylor, Naylor, there was no purpose for those offered convictions to be in front of the court. And in this case, the circumstance is different, and that is that the court, those prior convictions that were offered that were too old were elements of the armed habitual criminal charge that the defendant was on trial for. So the trial court was at least aware of those convictions. So they were going to come in anyway, basically. They were going to come in for purposes of proving that charge. Right. Additionally, you have the 99, I believe it's a burglary case, which is another element of a gun charge that both was within the Montgomery time period and it was offered for both impeachment purposes and to as an element of the UWI felon charge. So essentially, unlike Naylor, what we're talking about here is whether it was cumulative at this point. The court was properly aware the defendant was a convicted felon, and the cumulative nature makes it different than the Naylor case. And once the judge says they're admitted, the judge never says anything else about those convictions. The record is silent as to that. And I forget, did the defendant testify at trial? He did. He must have. He did. Or impeachment. And he did. Mr. McNulty, I hate to interrupt, but would you please wrap it up? Yes, Your Honor. The case, this case was not litigated, I'm sorry, this case was not challenged on the basis of the search in the trial court. There is no argument that this counsel could have been ineffective for not challenging the search. In fact, he clearly looked at this, he challenged a different basis, and that being the stop. Your Honor, with respect to why he did that, we will not know, because there is not, we don't know what his, we don't know what his, we don't know what the discovery showed. We don't know what he saw, whether it was an inventory search or something like that. There may be a Gantt independent basis absolutely why Gantt would not apply here under any reason. We did not have an evidentiary hearing. There's a lot of facts we don't know, whether those windows were open, whether they were closed. Your Honor, we would be asking for you to affirm the, for the reasons given and for the reasons in our brief, for you to affirm the defendant's conviction and sentence in this case. Mr. McNulty, before you take a seat, I want to thank you for the candor that you expressed during the course of your argument. I think it was absolutely the correct way to go. Thank you. Thank you, Your Honor. I would just briefly respond to the issue of whether- Why isn't a remand, why isn't a remand required? Nobody raised it. But we can do it on our own authority, can't we? Right, and it is our position that based on the facts and the record before us, you can also reverse under Gantt. He was secured. He was handcuffed. The officer testified to that. Was he a closer distance to his vehicle than Gantt was to his? And could that make a distinction? That's not clear, but I don't think it does make a distinction. The trial court had had the benefit of Gantt at the time that he heard the motion to suppress. And the state had said, Judge, look, we took the car. And the gun would have been discovered ultimately anyway. You're the trial judge now. What would you have done? The state had said, Hey, you're right, Gantt applies, but we would have found the gun anyway with an inventory search that would have occurred later on. Then the trial court will have to address the inevitable discovery. It would have had to address the issue, right, if the state had raised it. Right. Okay. Right. That's all. But I would like to point out, you know, the fact that he was handcuffed, he was secured sufficiently. But that has nothing to do with the ultimate discovery of the gun after an appropriate inventory that might have taken place two or three days later. That is true. However, there's nothing in the record to suggest that there was any sort of inventory search. There's no receipt. I know that. I know that. But, you know, I'd go so far as to say that the gun would have been discovered immediately. Had the officer believed that he had a proper basis to seize the vehicle because there was no one else there, it was not properly parked, he had already a basis to suspect that he made a furtive movement into the rear portion of the vehicle, and he would have found the gun immediately. If the car was going to be inventoried. If the car was going to be inventoried. It was going to be seized. The record really does not indicate that the car was inventoried. We know that the car belonged to somebody else, to the defendant's ex-wife. And he might have been given a chance to call the ex-wife and say, hey, your car is here, come and get it. Right. And you would think that at some point it would have come up if the car had been inventoried, and it didn't. And so our position is that based on this record, it is a better use of judicial resources to reverse the case outright, knowing the security. Really? You really believe this? I mean, we just reverse it outright because Gant is applicable, right? Mm-hmm. But you admit that were Gant in effect at the time that this actual hearing was conducted and the trial took place, that the state might not have been arguing attenuation? They could only argue attenuation. If they knew about it at the time. If the car was inventoried. You want the benefit of the Gant without the possible defense to Gant. I do realize that an available form of relief is a relief. A relief without giving the state an opportunity to challenge that relief based on attenuation. And maybe the answer is they didn't ask for it. But how could they ask for it if Gant wasn't applicable at the time, as far as everybody knew? They haven't asked for it in their brief, my point was. So does the state forfeit a right to the attenuation argument? The attenuation argument? My point, I guess, is that there's not much on this record to support that there is an attenuation argument out there. But I do recognize that if this court feels that the record does need to be more fully developed on that point. I don't want to ask you. You're the lawyer. Well, in that case, I would ask for an outright reversal. Somehow I knew you were going to say that. We're getting past our time. Okay. Except I have some questions. I have a right also. Okay. Is there any evidence in this case that there was an inventory search? No. In order to have an inventory search, what has to happen? It needs to be a valid stop. It needs to be done for the purpose of protecting the owner's property or the police from. Does there have to be an impoundment? And there has to be a lawful impoundment. And was there an impoundment here? There's no evidence of an impoundment. Okay. So that's all speculation, this stuff about it would have been discovered later. Right. Isn't that true? Right. Okay. Right. And if I may just make one brief point on the second issue, the fact that the convictions were offered for the element of the offense, those convictions were offered at the close of the state's case. After the defense testified, the state brought those up again and asked for purpose of rebuttal, can we bring those in? The courts said for impeachment, yes. So I think we can find that. Stop right there. Okay. So what you're saying is that the convictions were already before the trial judge for purposes of proving up the habitual criminal charge, and then the state says, oh, and by the way, can you also consider them for impeachment? Correct. So, okay. All right. I just wanted to clear that up. Yes. So to some extent it might sound like it's harmless. It was objected in the court at that point on the basis that they are not applicable for impeachment. But the objection was we don't want you to consider for that reason. The objection was that we don't think they're properly before you at all. Right. They were brought in two separate times, the appropriate time. So for these reasons, we do ask that this court reverse Mr. Frost's conviction. All right. Thank you very much. Thank you. All right. The case will be taken under advisement.